UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DANIEL WIESE,

                            Plaintiff,

        -against-

ROGER B. KELLEY, individually,

                            Defendant.
-------------------------------------------------------x



08 CIV. 6348
08 Civ. (

COMPLAINT JUDGE KARAS

Jury Trial Demanded

Plaintiff DANIEL WIESE, by his attorney Jonathan Lovett, Esq., for his

complaint respectfully alleges:

## NATURE OF THE ACTION

1. This a stigma-plus action for compensatory and punitive damages proximately

resulting from conduct engaged in by the Defendant, while acting under color of the laws

of the State of New York, in violation of Plaintiff's rights as guaranteed by the

Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiff DANIEL WIESE is a citizen of the United States, a domiciliary of the

State of New York, and a resident of the Northern Counties. At all times relevant to this

complaint, he was employed as Inspector General and Vice President of Corporate

1

Security by the New York State Power Authority (hereinafter "Authority"). Immediately prior to working for the Power Authority he was employed by the New York State Police with respect to which, following years of excellent service and an unblemished record, he retired in 2003 as Assistant Deputy Superintendent/Lieutenant Colonel.

4. Defendant ROGER B. KELLEY (hereinafter "Kelley"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the President and Chief Executive Officer of the Authority

## THE FACTS

5. By correspondence dated April 3, 2008, Kelley advised Plaintiff that the New York State Attorney General had commenced an investigation in connection with which Plaintiff had been subpoenaed and records of the Authority had been requested. As a result Kelley instructed: "given your position as Inspector General and Vice President of Corporate Security" effective immediately Plaintiff was: i) placed on administrative leave with pay; ii) forbidden access to "information and assets of the Authority"; iii) required to relinquish his "keys, key cards, computers, blackberrys [*sic*.], passwords, Authority vehicle and any other property of the Authority" in his possession. In that connection he was forbidden from "visiting any Authority facilities". Kelley's correspondence, which he and/or a subordinate acting at his direction immediately leaked to the media, is maintained by the Defendant as a personnel record with respect to Plaintiff. Subsequent to the leak the media publicly reported Kelley's determination to place Plaintiff on administrative leave and the factually false circumstances underlying that determination, a report intended by Kelley.

2

6. On May 6, 2008, New York State Attorney General Andrew M. Cuomo wrote to Kelley advising that his Office was "conducting an investigation of the New York State Police, had issued subpoenas to the Authority as a result, and:

> "During the course of our review some of the materials produced by NYPA in response to the Subpoenas, we have learned that affirmative steps were taken by NYPA personnel to purposefully destroy responsive information, specifically, e-mails on the blackberry [*sic.*] of Daniel Wiese ('Wiese e-mails'). This destruction took place on April 1, 2008, the day this investigation was announced in the media. In addition it appears that NYPA's IT system deleted many past e-mails on Wiese's computer system. These e-mails are relevant to this investigation. Undoubtedly, you appreciate the seriousness of this extremely troubling conduct. . .[W]e request that you take any and all steps necessary to recover the deleted Wiese e-mails and provide them to this Office immediately upon their recovery."

Cuomo's correspondence, leaked to the media by Defendant and/or a subordinate acting on his direction, is maintained by the Defendant as a personnel record with respect to Plaintiff. Subsequent to the leak the media publicly reported the substance of Cuomo's false allegations, as intended by Kelley.

7. Based upon Cuomo's correspondence and its false allegation that Plaintiff had engaged in criminal misconduct by way of *inter alia* tampering with evidence, on May 7, 2008, Kelley advised Plaintiff by letter:

> "This is to notify you that effective close of business today,

3

> May 7, 2008, you are being placed on an unpaid leave of absence
>
> from  your position of Inspector General and Vice President of
>
> Corporate Security at the New York Power Authority of the State
>
> of New York."

Kelley's letter, immediately leaked to the media by him and/or a subordinate at his direction, is maintained by the Defendant as a personnel record with respect to Plaintiff. Subsequent to the leak the media publicly reported the substance of Kelley's removal of Plaintiff from the payroll, a report intended by Kelley.

8.  By e-mail sent to Kelley and the members of the Board of Trustees of the Authority on May 19, 2008, Plaintiff requested that they publicly disclose the truth as known to them, that is: i) prior to Cuomo's announcement of any criminal investigation Plaintiff's BlackBerry had effectively "frozen"; numerous attempts to correct its malfunction were unsuccessful; an Authority technology specialist (Dominick Daniello) had determined that the BlackBerry could only be "unfrozen" by "re-booting" it, action that would result in the deletion of all information stored in the BlackBerry; that all of the data stored in the BlackBerry was previously saved to a computer "back-up"; that nothing by way of BlackBerry data so stored on the computer in any way was deleted; that the re-booting of the BlackBerry occurred prior to Cuomo's announcement that he was opening an investigation and manifestly had nothing whatsoever to do with it; and Defendant had all of the data from the BlackBerry as saved on the computer which could have been immediately provided to Cuomo. Plaintiff's e-mail was purposefully not leaked to the media by Defendant.

9. Instead of disclosing the truth, on May 22, 2008, Kelley again wrote to Plaintiff, this time advising: "This is to inform you that your employment with the Power Authority of the State of New York is terminated effective at the close of business Friday May 23, 2008". Kelley's correspondence, the substance of which was immediately released to the media by Defendant and/or a subordinate acting upon his direction, is maintained by Defendant as a personnel record concerning Plaintiff. Kelley's termination of Plaintiff was in turn publicly reported by the media as intended by Kelley.

10. Defendant's willful publication of defamatory information affecting Plaintiff's reputation, good name, honor, and integrity, and his refusal to publicly disclose the truth as known to him and the Authority, was conduct engaged in deliberately and maliciously.

11. With a view towards destroying Plaintiff's reputation Defendant at no time provided and/or offered to provide to him a post-termination name-clearing hearing in connection with his summary termination from the Authority's employ.

12. As a result of Defendant's purposeful conduct and given his maintenance in-house and dissemination to the media of personnel records memorializing the at-issue stigmatizing and defamatory data with respect to Plaintiff:

a. Plaintiff's continued ability to obtain employment and/or practice in the law enforcement profession and/or any security-related profession has been destroyed by Defendant,

b. Plaintiff will be required, in connection with any future employment applications, to affirmatively disclose that his employment with the Authority was summarily terminated as a result of accusations of criminal wrong-doing leveled by the New York State Attorney General which accusations were documented by Defendant in

5

Plaintiff's personnel records - - allegations that have already resulted in prospective employers' refusing to hire Plaintiff, and,

      c. Plaintiff will be required, in connection with any future employment applications, to authorize the Authority's release of the stigmatizing personnel documents as a result of which Plaintiff will be barred from any future meaningful employment in the public and/or private sector.

13. The allegations of criminal wrong-doing published by Defendant about Plaintiff in connection with the termination of his employment were: i) in every respect, patently false; ii) uttered in disregard for the truth as known to Defendant; iii) intended, without basis in fact and/or justification, to destroy Plaintiff's reputation and professional career; iv) not privileged or otherwise authorized; and v) published by Defendant in reckless disregard for the truth as evidenced by documentary proof in his possession, custody and/or control.

14. Under the circumstances Defendant's willful and calculatedly malicious conduct has caused Plaintiff to suffer: irreparable damage to his reputation; irreparable damage to his good name; irreparable damage to his honor; irreparable damage to his integrity; an inability to prospectively secure meaningful employment in his chosen profession; emotional upset; anxiety; public embarrassment; public humiliation; public shame; public degradation; pecuniary damages; and he has otherwise been rendered sick and sore.